IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RODNEY ALSUP,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:15-CV-1400-L** |
| | § | |
| **BECKETT MEDIA LLC,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Beckett Media LLC's ("Defendant") Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Doc. 19), filed August, 19, 2015. After careful consideration of the motion, response, record, and applicable law, the court **denies** Defendant's Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim on the ground raised but *sua sponte* raises whether Plaintiff has adequately pleaded a claim for intentional infliction of emotional distress ("IIED").

**I.     Factual and Procedural Background**

Rodney Alsup ("Plaintiff" or "Alsup") brought this action against Defendant Beckett Media, LLC ("Defendant" or "Beckett") in state court on April 4, 2015, asserting claims for breach of contract, disability discrimination in violation of the American with Disabilities Act ("ADA"), and invasion of privacy arising from an alleged violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). On May 4, 2015, Defendant removed the action to federal court based on federal question jurisdiction. On July 29, 2015, Alsup amended his complaint to include a claim for IIED.

In support of his claim for IIED, Plaintiff states:

> 3.   Plaintiff began work for Defendant on June 4, 2013 as National Sales Manager reporting directly to Company President Sandeep Dua [("Dua")]. In January 2014, Mr. Dua promoted Plaintiff to Director of Sales and Marketing. Mr. Dua's management style is to intimidate, embarrass[,] and "ride" employees constantly stressing that only "A" players are allowed on the bus and "C" players (including those with disabilities) are moved off the bus. In 2014, Mr. Dua threw presentations at [Plaintiff] in Cleveland, Ohio and made him leave a meeting room in front of fellow employees.
>
> 4.   Mr. Dua's non-stop bullying and unethical conduct caused [Plaintiff] to suffer a mental breakdown on August 27, 2014. Mr. Dua was perfectly willing to destroy, for minimal short-term gain, the relationships for which Plaintiff had worked for decades to establish. Plaintiff was stuck between a bullying boss and customers enraged by Mr. Dua's conduct.
>
> 5.   Mr. Dua's response to Plaintiff's hospitalization was to threaten disciplinary action and to lock him out of the building. Plaintiff's privacy rights were violated when his medical records, including doctor[']s findings and diagnosis, were provided to Mr. Dua and other employees. When Plaintiff's doctors allowed [him] to work for home, Mr. Dua wasted no time making impossible demands for multiple reports by the end of the week – including a 2015 Sales Budget and Plan. Further, Mr. Dua imposed humiliating and demeaning daily reporting requirements on Plaintiff. Mr. Dua is no stranger to harassing disabled workers and has been the subject of at least one other EEOC charge. On January 8, 2015, [Plaintiff] filed an EEOC Charge for violation of the ADA including retaliation.

Pl.'s Second Am. Compl. ¶¶ 3-5. Defendant has filed a motion to dismiss Plaintiff's IIED claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012)

**Memorandum Opinion and Order - Page 3**

(citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

**III.     Analysis**

   **A.     Plaintiff's IIED Claim**

Defendant moves for dismissal of Plaintiff's IIED claim because it contends that the claim is premised on the same facts as his claims for breach of contract, disability discrimination, and invasion of privacy.

IIED is a "gap-filler tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress," and its clear purpose is to provide "a cause of action for egregious conduct that might otherwise go unremedied." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citations and quotations omitted). The tort does not apply when the "'actor intends to invade some other legally protected interest, even if emotional distress results.'" *Id*. at 447.

Courts have also applied this doctrine to federal claims, including the ADA. *Nadeau v. Echostar*, No. 12-433, 2013 WL 1715429, at *3 (W.D. Tex. April 19, 2013) ("Based on these straightforward precedents, federal district courts applying Texas law have consistently held that an IIED claim cannot arise from the same events and injuries that support a claim brought simultaneously by the same plaintiff under the ADA and ADEA.") (citations omitted). Here, Plaintiff alleges that his emotional distress arose from events preceding his ADA claim. Plaintiff contends that Dua's humiliation and ridicule led to his mental breakdown and subsequent hospitalization. He further contends that his ADA, invasion of privacy, and breach of contract claims are premised on facts that occurred after his hospitalization, including, Defendant failing to accommodate him, sharing his medical records, and withholding pay. Accordingly, the court

determines that Plaintiff's IIED claim is not premised on the same facts as his other claims, and therefore, not barred for this reason.

### B.      Adequacy of Plaintiff's Allegations to State a Claim for IIED

While the court disagrees with the ground on which Defendant seeks dismissal, it has serious concerns whether the allegations of Plaintiff's Second Amended Complaint sufficiently plead a claim for IIED. The elements of a claim for IIED are: "1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 (1965)). Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995) (citations and internal quotation marks omitted). Claims of IIED "do not extend to ordinary employment disputes." *Creditwatch,* 157 S.W.3d at 817. "[E]xcept in circumstances bordering on serious criminal acts," conduct "will rarely have merit" as a claim for IIED. *Id.* at 818 (citations omitted).

Plaintiff relies on *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999), to bring his IIED claim in the employment context. In that case, the trial evidence showed that the supervisor

> repeatedly physically and verbally threatened and terrorized [the employees]. There was evidence that [the supervisor] was continuously in a rage, and that [he] would frequently assault each of the employees by physically charging at them. When doing so, [he] would bend his head down, put his arms straight down by his sides, ball his hands into fists, and walk quickly toward or "lunge" at the employees, stopping uncomfortably close to their faces while screaming and yelling. The employees were exceedingly frightened by this behavior, afraid that [the supervisor] might hit them.

**Memorandum Opinion and Order - Page 6**

*GTE Southwest,* 998 S.W.2d at 613-14. Further, the supervisor used profane and vulgar language daily, including using the words "f——" and "motherf——er," frequently yelled at the top of his lungs, and pounded his fists when speaking with his employees. *Id.* The Texas Supreme Court found that the supervisor's "ongoing acts of harassment, intimidation, and humiliation and his daily obscene and vulgar behavior . . . went beyond the bounds of tolerable workplace conduct." *GTE Southwest,* 998 S.W.2d at 617 (citation omitted).

In his Second Amended Complaint, Plaintiff alleges that Dua's negative treatment led to his mental breakdown and hospitalization. While the court recognizes that this case is only in the pleadings stage, the allegations of the Second Amended Complaint do not set forth conduct for which the court can reasonably conclude rises to the level of that held actionable in the *GTE Southwest* case.[*] The conduct alleged in Plaintiff's Second Amended Complaint is not even marginally close to the conduct for which the supervisor was held liable in *GTE Southwest*. As the Texas Supreme Court stated in *GTE Southwest*, "even when an employer or supervisor abuses a position of power over an employee, the employer will not be liable for mere insults, indignities, or annoyances that are not extreme and outrageous." *Id.* at 617 (citation omitted). The court recognizes that Dua's behavior was demeaning, humiliating, and insulting, and is no cause for approbation; however, it falls far short of the behavior required to adequately set forth an IIED claim. Accordingly, the court determines Plaintiff has failed to state a claim upon which relief can be granted.

---

[*] In response to Defendant's motion, Plaintiff attaches a declaration from a witness attesting to Dua's conduct. As Plaintiff correctly states in his response, he does not have to present evidence at this time. The declaration is outside the bounds of a Rule 12(b)(6) motion, as the declaration is not a part of the pleadings. *See* Section II of this Memorandum Opinion and Order, *supra*. To consider the declaration, the court would have to convert this motion to dismiss to a motion for summary judgment. The court exercises its discretion and will not convert this motion to a motion for summary judgment. Further, even if the court took the statements contained in the declaration as true, they do not rise to the level of conduct necessary to constitute an IIED claim.

**Memorandum Opinion and Order - Page 7**

## IV. Conclusion

For the reasons stated herein, the court **denies** Defendant's Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim on the ground raised but *sua sponte* raises whether Plaintiff has adequately pleaded a claim for IIED. Accordingly, the court **directs** Plaintiff to file a response to its *sua sponte* motion by **March 30, 2016**. Defendant shall not reply unless directed to do so by the court.

**It is so ordered** this 16th day March, 2016.

                                              Sam A. Lindsay
                                              United States District Judge